IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEIL SCHULTZ., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 10 C 71 |
| v. | ) | |
| | ) | The Honorable William J. Hibbler |
| | ) | |
| IGPS CO. LLC AND SCHOELLER AREA | ) | |
| SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Neil Schultz alleges that Defendants iGPS Company and Schoeller Area Systems have

been infringing on two of his patents, U.S. Patent 6,745,703 ('703 Patent) and U.S. Patent 6,758,148

('148 Patent). Defendants filed their answer to Schultz's Second Amended Complaint in January 2010.

In March 2010, the Defendants amended the affirmative defenses included in their answer. In August

2010, Defendants moved to amend their affirmative defenses a second time. Schultz objects, arguing that

some of the defenses are barred by the doctrine of assignor estoppel, others are not pleaded with sufficient

particularity, and Defendants' motion is untimely.

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. Fed. R. Civ. P. 15.

Once the period for a party to amend as a matter of course has lapsed, a party may amend its pleadings

only with the opposing party's written consent or with leave of the court. Fed. R. Civ. P. 15(a)(2). The

Rule further directs courts to grant leave to amend freely when justice so requires, so that cases are

decided on their merits and not on technicalities. Fed. R. Civ. P. 15(a)(2); *Campania Mgmt. Co. v. Rooks,

Pitts, & Poust*, 290 F.3d 843, 848-849 (7th Cir. 2002). District courts may deny leave to amend where

there is undue delay, bad faith, or a dilatory motive. *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Courts may also deny leave to amend if the amendment would unduly prejudice the opposing party or would be futile. *Brunt v. Serv. Emp. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). A proposed amendment is futile if it would not survive a motion to dismiss. *Id.*

In this case, Bruce Torrey and Neil Schultz are named as co-inventors of the '703 and '148 patents. Torrey assigned his rights in the patents to his former employer, CHEP International, Inc. (CHEP). CHEP later deliberately and expressly abandoned its rights in the patents by failing to file its maintenance fees. Apparently, Schultz also failed to file his maintenance fees, but after acquiring CHEP's interest in the patents, asserted to the Patent Office that he was the sole remaining owner fo the patents and that the failure to pay the maintenance fees was unintentional. Schultz thus reinstated his rights to the patents and presses his claims under the his own rights in the patents.

Schultz argues the Defendants' 2nd, 3rd, 16th, 17th, 20th, and 23rd-28th Affirmative Defenses, all asserting the invalidity or unenforceability of the patents, would be futile because they are barred by the doctrine of assignor estoppel. Schultz bases this argument on the Torrey's initial assignment of his rights in the patents to CHEP. Defendants raise two basic arguments in response to Schultz's objection. First, Defendants suggest that assignor estoppel does not apply in the first instance because Torrey assigned his rights in the patents to CHEP and not to Schultz, and thus the justification for assignor estoppel is absent. Second, Defendants argue that they are not in privity with Torrey and, therefore, the doctrine, if it applies, does not apply to them.

Assignor estoppel is an equitable doctrine that prevents a person from assigning the rights to a patent from later challenging the validity of the patent. *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224-25 (Fed. Cir. 1988); *Shamrock Tech., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed.

Cir. 1990). Assignor estoppel also bars those in privity with the assignor. *Diamond Scientific Co.*, 848 F.2d at 1224.

In *Diamond Scientific Co.*, the federal circuit upheld the doctrine of assignor estoppel, which had come into question after the Supreme Court invalidated the related doctrine of licensee estoppel in *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). *Diamond Scientific Co.*, 848 F.2d at 1224. The court discussed four justifications for the doctrine: (1) preventing unfairness or injustice; (2) preventing one from benefitting from its own wrong; (3) by analogy to estoppel by deed in real estate; and (4) by analogy to a landlord-tenant relationship. *Id.* Although the court held that each justification may have merit depending on the facts of a particular case, it focused on the doctrine's potential to prevent unfairness and injustice. *Id.* The court observed that the doctrine was "rooted in the notion of fair dealing" and that the "implicit representation by an assignor that the patent rights that he is assigning (presumably for value) are not worthless" prevents the assignor from later challenging the validity of the patent to the detriment of the assignee. *Id.* Thus, the Federal Circuit recognizes, the doctrine is primarily concerned with the balance of equities between the parties. *Shamrock Tech., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1579 (Fed. Cir. 1993).

The Defendants argue that because Schultz is not the assignee, in that he is asserting his own rights under the patent and not the rights that Torrey assigned to CHEP, the balance of equities does not require the application of estoppel. Although the Federal Circuit has not gone so far as to hold explicitly that only an assignee can rely on the doctrine of assignor estoppel, that holding is implicit in *Diamond Scientific Co*:

> We are, of course, not unmindful of the general public policy disfavoring the repression of competition by the enforcement of worthless patents. Yet despite the public policy encouraging

people to challenge potentially invalid patents, there are still circumstances in which the equities *of the contractual relationships between the parties* should deprive one party (as well as others in privity with it) of the right to bring that challenge.

848 F.2d at 1225 (emphasis added).

Schultz points the Court to no case in which someone other than an assignee (such as an alleged co-inventor) successfully applied the doctrine of assignor estoppel. Although Schultz was CHEP's assignee, those are not the rights he is asserting here — CHEP abandoned its rights in the '703 and '148 patents by intentionally letting the maintenance fees on those patents lapse and it expressly disclosed this fact to Schultz. Schultz acquired CHEP's interest in the patents for the purposes of obtaining sole ownership of the patents in an effort to reinstate his own rights to the patents. Thus, Schultz and the Defendants have no contractual relationship — at least not one that matters for purposes of assignor estoppel. The Court holds that the doctrine of assignor estoppel does not render the Defendants' affirmative defenses based on the invalidity or unenforceability doctrines to be futile.

Even if the Court were to hold that the doctrine of assignor estoppel was relevant, it still is not clear that it would render the Defendants' affirmative defenses futile. The Federal Circuit has repeatedly stated that the application of the doctrine requires the Court to exercise its discretion to balance the equities between the parties. *Carroll Touch, Inc.*, 15 F.3d at 1579; *Shamrock Tech., Inc.*, 903 F.2d at 793; *Diamond Scientific Co.*, 848 F.2d at 1225. Privity, too, must be determined by balancing the equities. *Shamrock Tech., Inc.*, 903 F.2d at 793. To determine whether the Defendants are in privity with Torrey would require the Court to evaluate the relationship between Torrey and the Defendants in "light of the act of infringement" and determine whether the closeness of that relationship is such that the "equities favor applying the doctrine to [the Defendants.]" *Shamrock Tech., Inc.*, 903 F.2d at 793; *see also Carroll Touch, Inc.*, 15 F.3d at 1580. That is not a question the Court can resolve on a motion to dismiss —

which is the standard Schultz must meet to demonstrate that the affirmative defense would be futile. *Brunt*, 284 F.3d at 720.

Schultz next argues that the Defendants' 4th, 5th and 23rd Affirmative Defenses are not adequately pleaded. Schultz points to two decisions of the Federal Circuit to suggest that an affirmative defense based on inequitable conduct must be pleaded with particularity. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 663-64 (Fed. Cir. 2008); *Ferguson Beauregard/Logic v. Mega Sys.*, 350 F.3d 1327, 1344 (Fed. Cir. 2003).

In *Ferguson*, the plaintiff argued that the Defendant's patent had been improperly revived[1] after the defendant had not timely paid the seven-and-a-half year maintenance fee on the patent at issue and the patent had lapsed. *Ferguson*, 350 F.3d at 1330, 1343. The defendant, however, filed a petition to revive the patent at the PTO, which was granted. *Id.* at 1343. The plaintiff alleged only that the revival was improper because the late payment was not intentional. *Id.* at 1343-44. The court held that a plaintiff seeking to demonstrate that a patent has been improperly revived must plead more than a mere allegation that the revival was improper. *Id.* Rather, the pleader must suggest that the revival or reinstatement was achieved by virtue of inequitable conduct, which must be pleaded with particularity. *Id.*

*Aristocrat Techs* makes clear some of the rational behind the court's holding in *Ferguson*. *Aristocrat Techs* held that improper revival did not provide grounds to claim that a patent was invalid. *Aristocrat Techs.*, 543 F.3d at 663. The court reasoned that if procedural irregularities could form the basis of a claim of patent invalidity that the courts would be swept away in deluge of arguments relating to every minor transgression. *Id.* Thus, "absent proof of inequitable conduct, . . . the applicant's absolute

---

[1] Although *Ferguson* uses the term "revival," it appears to in fact concern reinstatement, as the patent issued and had expired due to the defendant's failure to pay the maintenance fees.

compliance with the internal rules of patent examination becomes irrelevant after the patent has issued."
*Aristocrat Techs.*, 543 F.3d at 663.

Defendants argue that *Ferguson* and *Aristocrat Techs* are not relevant because they concern revival and not reinstatement and because their defenses are for unenforceability and not invalidity. The Court is not persuaded by the Defendants' arguments. Once the Director of the PTO accepts the payment of an unintentionally late maintenance fee, the "patent shall be considered as not having expired." 35 U.S.C. § 41(c)(1). *Ferguson* and *Aristocrat Techs* make clear that merely pleading that the non-payment was not unintentional (and therefore the patent was not properly reinstated) does not create an affirmative defense. *Ferguson*, 350 F.3d at 1344; *Aristocrat Techs*, 543 F.3d at 663. Rather, *Ferguson* and *Aristocrat Techs* require that an affirmative defense based on the improper reinstatement of a patent (or improper revival of an application) requires a party to plead inequitable conduct — perhaps by pleading that a party made a misrepresentation of material fact or failed to disclose material information — and must do so with particularity. Defendants have not pleaded with sufficient particularity.

That does not, however, mean that Defendants could not plead such claims with particularity. The Court directs Defendants to amend its 4th and 5th Affirmative Defenses on or before January 24, 2011, to plead the alleged inequitable conduct with particularity.

Schultz only half–heartedly attacks Defendants' 23rd Affirmative Defense, arguing that is not pleaded with sufficient particularity. Defendants' 23rd Affirmative Defense alleges that the patents are not enforceable based on the deliberate non-disclosure of material prior art. Schultz contends that Defendants have not adequately stated the way in which the patent examiner would have used the withheld references to prior art. Defendants' Affirmative Defense, however, references their invalidity contentions, in which they detail the materiality of the prior art. Federal notice pleading rules require a

6

short or plain statement of the claim or defense. Fed. R. Civ. P. 8. Defendants have made such a statement, and the Court will not require them to amend their affirmative defense by incorporating cumbersome and detailed allegations into their pleading.

Schultz's final argument in favor of denying Defendants' motion to amend their affirmative defenses is that Defendants' motion is untimely. Schultz complains that Defendants waited seven months to amend their affirmative defenses. Schultz contends that Defendants knew all along about these defenses, but withheld them purposefully — demonstrating bad faith and dilatory motives (though he does not specify precisely what that motive might be). Schultz, though, never hints at any prejudice he might suffer if the Court allows Defendants to amend their affirmative defenses. Delay alone is usually not sufficient to deny a party leave to amend. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). The Court has commented, both in written opinion and during in-court hearings, that both parties have over litigated this suit. As Schultz has been a party to the process that brought this case to a standstill (there are 262 docket entries, and Defendants' final answer is not yet on file), he can hardly complain that a seven-month delay in adding affirmative defenses is unreasonable.

The Court GRANTS Defendants' Motion to Amend Their Affirmative Defenses and further directs Defendants to amend their Fourth and Fifth Affirmative Defenses to plead inequitable conduct with particularity.

IT IS SO ORDERED.

1/3/11
Dated

Hon. William J. Hibbler
U.S. District Court

7